**Ruben OYOLA, Petitioner–Appellant,**

v.

**Michael J. BOWERS, Attorney General for the State of Georgia, Tommy Wallace, Jr., Respondents–Appellees.**

**No. 90–8558.**

United States Court of Appeals, Eleventh Circuit.

Nov. 27, 1991.

---

Jay Lester Strongwater, Leeza Rhee Cherniak, Klein & Strongwater, Atlanta, Ga., for petitioner-appellant.

Dennis R. Dunn and Mary Beth Westmoreland, Asst. Attys. Gen., Atlanta, Ga., for respondents-appellees.

Before KRAVITCH and EDMONDSON, Circuit Judges, and GODBOLD, Senior Circuit Judge.

GODBOLD, Senior Circuit Judge:

In this case the federal district court denied a petition for habeas corpus filed by a Georgia state prisoner alleging ineffective assistance of counsel.

Petitioner Oyola was a passenger in a vehicle stopped on Interstate 75 in Georgia for a malfunctioning tail light. A consent search was conducted, and, with the aid of tools, cocaine was found concealed in the left rear quarter panel of the vehicle. Oyola and his companion were convicted of trafficking in cocaine in violation of the Georgia statute, O.C.G.A. § 16–13–31(a)(1), which then read:

> Any person who knowingly sells, manufactures, delivers, or brings into this state or who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine, as described in Schedule II, in violation of this article commits the felony offense of trafficking in cocaine.

Oyola was sentenced to 25 years plus a $500,000 fine.

The indictment charged in the language of the statute that the defendants were "knowingly . . . in actual possession of Cocaine." At the time of trial, which began October 8, 1986, decisions of the Georgia Court of Appeals had held that a conviction under the statute could be based on either actual or constructive possession. The trial judge, therefore, instructed the jury that it could convict if either or both defendants knowingly had actual or constructive possession either alone or jointly. (Tr. 208). The court inquired whether there were exceptions, and the following ensued:

> MR. BEARDEN: Yes, Your Honor. First, we reserve all objections and do not waive any objections.

> THE COURT: Yes, sir.

> MR. BEARDEN: Secondly, the Court instructed the Jury that if the Defendants knowingly had actual or constructive possession he would be guilty of Trafficking, and certainly that is what the Code Section reads but the indictment reads 'that the Defendant did knowingly be in actual possession of Cocaine', and that discrepancy between the indictment and what the Code Section was is important.

> THE COURT: I said knowingly in possession?

MR. BEARDEN: Knowingly had actual or constructive possession, I believe, Your Honor, that's what I took down.

THE COURT: Oh, I gave the Charge on Constructive Possession, but constructive possession is actual possession, is what it is.

Tr. 212.

An appeal was taken by new counsel, which raised no issue concerning the jury instructions, and the conviction was affirmed. *Oyola v. State*, 184 Ga.App. 31, 360 S.E.2d 722 (1987). The Supreme Court of Georgia denied certiorari September 24, 1987.

Meanwhile, on September 21, 1987 the Georgia Court of Appeals decided *Lockwood v. State*, 184 Ga.App. 262, 361 S.E.2d 195 (1987), which adhered to earlier caselaw that a conviction under § 16–13–31(a) could be based on actual or constructive possession and a jury instruction to that effect was not error.

On February 5, 1988 the Supreme Court of Georgia reversed the Court of Appeals decision in *Lockwood* and held that a conviction under O.C.G.A. § 16–13–31(a) required actual possession and that a jury instruction stating that conviction could be based on constructive possession was reversible error. *Lockwood v. State*, 257 Ga. 796, 364 S.E.2d 574 (1988). The court noted: "There is most assuredly a difference between actual and constructive possession even if the difference is only a matter of degree." *Id.* 364 S.E.2d at 576.

Petitioner filed an application for state habeas corpus relief on June 10, 1988, which raised the issue of ineffective assistance of counsel, along with other issues. An evidentiary hearing was conducted July 13, 1988. Counsel called to the attention of the state habeas judge the recent decision of the Supreme Court of Georgia in *Lockwood*. The court denied relief on the ineffective counsel issue on the ground that under Georgia procedural law error in the court's charge must be specifically raised at trial and on appeal, and counsel for petitioner had failed to raise the issue at

both levels and therefore had procedurally defaulted. The court, therefore, declined to consider the merits of this particular claim.

The Supreme Court of Georgia denied a certificate of probable cause to appeal.

▮ The federal petition for habeas corpus relief now before us was filed June 12, 1989.[1] Among the grounds alleged was ineffective assistance of counsel because counsel failed to object to the jury charge on possession. No evidentiary hearing was held. The court denied relief by an order entered December 19, 1989. The court found that prior to instructing the jury on possession the judge informed counsel that he would instruct on both constructive and actual possession, and neither party objected. We have set out above the colloquy that occurred after the instructions were given.

The court found that trial counsel's failure to inform himself of the fundamental elements of the offense with which Oyola was charged fell below the level of reasonable professional assistance that the Sixth Amendment guaranteed.

> While counsel's conduct at the trial and during the pre-trial phase is generally creditable, his failure to inform himself of the most fundamental element of the offence with which his client was charged fell well below the level of reasonable professional assistance that the Sixth Amendment guarantees. Attorney Bearden's neglect to read the statute and discern its obvious level of mental culpability is an error unjustified by prevailing professional norms. This observation is brought starkly into contrast by the statement of Mr. Bearden to the trial judge that the statute allowed conviction based on constructive possession as well as actual possession.

Order, p. 28.

\* \* \* \* \* \*

Viewing counsel's failure to inform himself of the requisite mens rea from his

---

1. An earlier federal petition had been filed but dismissed on or about April 6, 1988, for failure

to exhaust state remedies, without prejudice to refiling.

perspective at the time, and applying a heavy measure of deference to his action, the Court nonetheless finds that it falls well short of prevailing professional norms.

*Id.,* p. 29.

\* \* \* \* \* \*

In this case, the Court faces an error at the most fundamental level of effective advocacy. Counsel's ignorance of the elements of a charged offense falls below the performance standard required by the Sixth Amendment. Therefore, the Court finds that Mr. Bearden's conduct is outside the range of professionally competent assistance.

*Id.,* p. 30.

The district court considered whether there was a procedural bar under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). It held there was no "cause" at the trial level because counsel's general reservation of objections properly preserved all legally cognizable exceptions to the jury charge, since under Georgia procedures the defendant in a criminal case is not required to except to jury charges in order to preserve errors for appeal, thus counsel had done all that he was required to do. Order, p. 37. But, the court held, counsel's failure to raise the correctness of the jury instruction on appeal was a procedural default. It held, however, that, although the Georgia Supreme Court decision in *Lockwood* had not come out until several months after Oyola's merits appeal, the legal basis set out in the Supreme Court's decision in *Lockwood* was "reasonably available" to appellate counsel, because under Georgia law at the time of the merits appeal due process required that a defendant charged with a statutory violation must be convicted on language contained in the statute. Therefore, the court concluded, in spite of the obvious illegality of the jury instruction it could not consider the constitutional claim because it was "constrained by the doctrines of comity and finality."

As it now turns out, the Georgia courts disagree with the federal habeas judge concerning whether, in a Georgia appeal conducted before the Supreme Court's decision in *Lockwood,* appellate counsel could be expected to raise the issue of the error of instructing on constructive possession under § 16–13–31(a)(1). Ten months after the federal decision, on October 18, 1990, the Georgia Supreme Court decided *Scott v. Hernandez–Cuevas,* 260 Ga. 466, 396 S.E.2d 900 (1990). Hernandez–Cuevas was in the same position as Oyola in the present case. At the time of his conviction the Georgia caselaw (including the Court of Appeals decision in *Lockwood*) was that evidence of constructive possession was sufficient to convict under § 16–13–31(a). The trial judge had instructed the jury accordingly. The jury charge had not been raised as an error in the direct appeal. After the direct appeal was decided the Georgia Supreme Court decided *Lockwood,* overruling the previous Court of Appeals cases that had held constructive possession to be sufficient. Hernandez–Cuevas had petitioned in state court for a writ of habeas corpus. The state habeas judge had made three determinations: (1). The jury charge was reversible error under the Supreme Court's decision in *Lockwood;* (2). *Lockwood* was to be applied retroactively; (3). Hernandez–Cuevas's claim was not procedurally defaulted. Therefore, the Georgia Supreme Court held: "Hernandez–Cuevas could not have been expected to raise the *Lockwood* issue in the direct appeal because *Lockwood* had not yet been decided [in the Georgia Supreme Court]." 396 S.E.2d at 900. The trial court thus had been correct in granting the writ of habeas corpus, and its decision was affirmed.

Oyola is entitled in this federal case to the same relief that Hernandez–Cuevas received at the hands of the Georgia courts. Under principles of comity and federalism—and of common sense judicial administration as well—this federal court should implement the decisions of the Georgia courts in *Hernandez–Cuevas.* In the case before us the federal district court, without the benefit of *Hernandez–Cuevas,* looked to a Georgia general rule, drawn from Georgia cases, requiring that a defendant charged under a statute must be convicted

based on language contained in the statute. That rule, the federal judge said, procedurally required a Georgia lawyer, on appeal, to raise the issue of the constructive possession charge despite an unbroken line of Georgia cases that the instruction was correct. In *Hernandez–Cuevas* the Georgia courts, trial and Supreme, in a Georgia case, with Georgia interests at stake, addressed the same issue and held that Georgia procedures did not require the appellate lawyer to raise the constructive possession charge on appeal, and that failure to raise it was not a procedural bar. The federal judge considered that for a Georgia appellate lawyer the issue later addressed by the Georgia Supreme Court was not novel. Within months after his decision the Supreme Court of Georgia concluded otherwise.

This court is not reviewing the holding of the Georgia habeas judge that there was procedural default, nor the judgment accordingly entered by the trial court. Rather our task is to review the correctness of the judgment entered by the federal habeas judge who examined the state proceedings for constitutional error. For this purpose we look to Georgia law for such guidance as it may give us on the Georgia procedural components embedded in the constitutional issue. The Georgia law tells us in no uncertain terms that the federal judge's decision, and the judgment of the federal district court, are wrong because the federal judge thought—as the state trial judge had thought—that under Georgia law there had been a procedural default. The Georgia Supreme Court has now told us that under Georgia law there was no procedural default. Comity, federalism, and effective operation of the intertwined state and federal systems tell us not to shut our eyes and ears to what Georgia has told us. Comity concerns the recognition that one sovereign extends to the legislative, executive and judicial acts of another. *Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 143–44, 40 L.Ed. 95 (1895). For this court to write a "Know Nothing" decision that declines to recognize the judicial acts of the Georgia courts would stand comity on its head.

The position of the State of Georgia is clear. In this court, on December 17, 1990, Oyola moved to expedite his appeal to the next oral argument calendar, on the ground that *Hernandez–Cuevas* was determinative of the case. On December 28, 1990 the Georgia Attorney General responded that he considered oral argument not necessary, and said: "[U]pon studied review it appears the opinion of the Supreme Court of Georgia in *Scott v. Hernandez–Cuevas*, 260 Ga. 466, 396 S.E.2d 900 (1990), supports the Petitioner's position." We denied Oyola's motion on January 8, 1991. Next the Attorney General, on February 7, 1991, wrote this court stating that the case "no doubt would be governed by *Hernandez–Cuevas*" and suggested that judicial resources not be wasted on oral argument. On February 11, 1991 Oyola moved for release pending appeal relying upon *Hernandez–Cuevas* and the state's acknowledgments of the controlling nature of *Hernandez–Cuevas*. The state opposed that motion because, if relief were granted, it would be necessary for Oyola to be transferred to the county of conviction to allow it to make a determination whether he should be retried and whether he should be granted release on bail. This time the state referred to *Hernandez–Cuevas* as "very likely controlling in this matter." We denied both the motion of the state to waive oral argument and Oyola's petition for immediate release.

At oral argument the state described the choices available to this court as granting relief based upon *Hernandez–Cuevas* or requiring Oyola to start over again in state court with a new request for collateral relief. Understandably the state did not confess error; it continues to disagree with the federal habeas judge's underlying finding that counsel was ineffective.

The recognition by the state that *Hernandez–Cuevas* would be controlling is undergirded by the holding of the Supreme Court of Georgia that its decision is retroactive. The situation in this case is similar to that presented in *Thompson v. Wainwright*, 714 F.2d 1495 (1983), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 562

(1984), where we were called upon to decide whether a state could waive exhaustion of state remedies although *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), had held that total exhaustion of all claims of a habeas petitioner was a prerequisite to a federal habeas proceeding. We held that exhaustion was not a matter of federal jurisdiction but rather "a principle that protects institutions and values." We said this:

> The state, then, must be allowed to assert that it wishes to forego the opportunity for initial review in those instances where initial review operates to its disadvantage. It is entitled to decide that this best vindicates its interest.... There is an element of Big Brotherism for a federal court to say, with respect to a principle that protects state institutions and values, that as a matter of federal law the state does not have the power to assert a desire to eschew application of the principle when it operates to its injury. This stands comity on its head and promotes state-federal disharmony. This is not to say that the contour and scope of comity that exhaustion involves are not federally defined, but rather that a definition which ineluctably bars state waiver is wrong.

*Id.* at 1505. The requirements of federal law that state procedural rules be vindicated and that cause and prejudice be demonstrated are "principle[s] that protect[s] state institutions and values." They are not principles for the convenience of federal administration of habeas corpus. Our decision in this case does not "undermine the values inherent in our federal system of government...." Nor does it "render the actions of state courts a serious disrespect in derogation of the constitutional balance between the [federal and state] systems." *Schneckloth v. Bustamonte,* 412 U.S. 218, 263, 93 S.Ct. 2041, 2066, 36 L.Ed.2d 854 (1973) (Powell, J. concurring). Rather we do precisely the opposite. We recognize the values inherent in our federal system and give proper respect to actions taken by the courts of the State of Georgia. Federal courts accept an adequate and independent state court finding that there *is* procedural default, and treat this as a bar to federal habeas review of a federal claim, unless the petitioner can show cause and prejudice. *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989). Similarly, we see no federal reason for a federal court to refuse to accept an adequate and independent state court finding that particular conduct of counsel with respect to a particular subject matter is *not* a procedural default. In the framework of this case no federal interest would be implicated in our either reaching a federal determination different from that reached by the state or in declining to recognize Georgia's determination.

This case differs from *Pelmer v. White,* 877 F.2d 1518 (11th Cir.1989). There counsel did not raise the constitutional issue created by a jury instruction that at the time of trial was accepted by the Alabama cases. Pending an appeal Alabama overruled the prior cases and held the instruction unconstitutional. We held that nonetheless there was a procedural default because the underlying constitutional principle was reasonably available. This case differs from *Pelmer* because the Georgia courts have addressed the issue of procedural default and have told us that the constitutional principle was not reasonably available to a Georgia lawyer, and moreover, that its decision is to be applied retroactively. There was no such state court guidance in *Pelmer.*

REVERSED and REMANDED to the district court with instructions to grant the writ subject to the right of the state to retry Oyola within a reasonable time.